UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Brook Village North Associates

        v.                          Civil No. 06-cv-046-JD
                                    Opinion No. 2006 DNH 126
Alphonso Jackson, Secretary,
United States Department of
Housing and Urban Development,
and Federal National Mortgage
Association

O R D E R

    Brook Village North Associates ("Brook Village") brought
suit seeking a declaratory judgment that it is entitled to prepay
its mortgage loan held by the Federal National Mortgage
Association ("Fannie Mae") and that the United States Department
of Housing and Urban Development ("HUD") lacks authority to
interfere with Brook Village's prepayment of the balance on the
loan.[1]  Brook Village also claims that Fannie Mae breached the
loan agreement by failing to accept prepayment.  HUD and Fannie
Mae each move to dismiss the claims against them, and Brook
Village objects to their motions.

---

    [1]Because Brook Village's claim against Alphonso Jackson is
brought in his official capacity, HUD rather than Jackson is
deemed to be the defendant.

<u>Background</u>

Brook Village owns Brook Village North Apartments, which is a 160-unit rental housing project in Nashua, New Hampshire, (the "Project").  The Project was built with financing authorized by 12 U.S.C. § 1715z-1, known as Section 236 of the National Housing Act.  Under that program, HUD insured the loan and made mortgage interest reduction payments, and Brook Village was obligated to provide affordable housing for eligible tenants.  In addition, HUD and Brook Village entered into a Rent Supplement Program agreement, under 12 U.S.C. § 1701s, which provides for rent subsidies on behalf of qualified tenants.

Brook Village's Section 236 mortgage note, for $3,446,500 and dated November 4, 1971, was made with the National Shawmut Bank of Boston with a due date of March 1, 2013.  "Rider A" that is incorporated into the Section 236 mortgage note provides, in pertinent part, that the loan cannot be prepaid "without the prior written approval of the Federal Housing Commissioner except where:  . . . (2) the maker is a limited dividend entity which is not receiving payments from the Commissioner under a rent supplement contract . . . and the prepayment occurs after the expiration of twenty (20) years from the date of final endorsement . . . ."  Fannie Mae is the current holder of the note.

2

Since Brook Village financed the Project, federal law applicable to prepayment of Section 236 loans has changed several times but continues to impose restrictions on a mortgagor's right to prepay a loan without HUD approval.  See, e.g., Independence Park Apartments v. United States, 449 F.3d 1235, 1237 (Fed. Cir. 2006) (reviewing history); Aspenwood Inv. Co. v. Martinez, 355 F.3d 1256, 1257 (10th Cir. 2004) (same); Forest Park II v. Hadley, 336 F.3d 724, 729 (8th Cir. 2003) (same).

Brook Village is a limited dividend entity.  It has not received any payments under the Rent Supplement Contract since 1998.  In 2000, which was more than twenty years after the final endorsement on the mortgage note, Brook Village consulted with New Hampshire HUD officials to confirm that it had not received any payments under the Rent Supplement Contract since 1998. Cecile Chabot, of the New Hampshire HUD office, confirmed that Brook Village was eligible to prepay the Section 236 loan without HUD approval.  Brook Village then gave the notices required under federal law for prepayment of the loan.  In January of 2001, just before scheduled prepayment, HUD notified Fannie Mae that it would not approve prepayment.  Fannie Mae notified Brook Village that it would not accept prepayment.

Between January of 2001 and June of 2005, Brook Village attempted to convince HUD that it was eligible to prepay the loan without HUD approval.  In August of 2005, Brook Village again

3

gave the notices required for prepayment.  On January 11, 2006,
Brook Village attempted to pay off the loan by tendering a check
in the amount remaining on the loan to GMAC Commercial Mortgage
Company, which serviced the loan for Fannie Mae.  GMAC rejected
the payment the next day because HUD denied approval for
prepayment.


## Discussion

Brook Village seeks to prepay the Section 236 loan to
terminate its participation in the federally subsidized housing
program.  After its attempts to prepay failed, Brook Village
brought suit on February 6, 2006, seeking a declaratory judgment
that it is entitled to prepay the Section 236 loan and that HUD
lacks authority to instruct Fannie Mae or its agent, GMAC, to
reject that payment.  Brook Village also brought a claim against
Fannie Mae for breach of the terms of the mortgage note.  HUD
moves to dismiss the declaratory judgment action, and Fannie Mae
moves to dismiss the breach of contract claim.


## Standard of Review

In considering a motion to dismiss, pursuant to Federal Rule
of Civil Procedure 12(b)(6), the court accepts the facts alleged
in the complaint as true and draws all reasonable inferences in
favor of the plaintiff.  Edes v. Verizon Comms., 417 F.3d 133,

4

137 (1st Cir. 2005).  The court must determine whether the complaint, construed in the proper light, "alleges facts sufficient to make out a cognizable claim."  Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002).  "The standard for granting a motion to dismiss is an exacting one:  'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" McLaughlin v. Boston Harbor Cruise Lines, Inc., 419 F.3d 47, 50 (1st Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 46 (1957)).

I.  HUD's Motion to Dismiss

     HUD contends that under its interpretation of its regulation applicable to Section 236 loans, 24 C.F.R. § 236.30(a)(1), Brook Village is not entitled to prepay the note without HUD approval.[2] Brook Village responds that § 236.30(a)(1) imposes the same conditions as the mortgage note and that it has satisfied those conditions for prepayment without HUD approval.  The First Circuit has not addressed claims for prepayment under the HUD regulation at issue here, § 236.30, or the prepayment provision

_____

     [2]HUD represents that 24 C.F.R. § 236.30 is no longer reprinted in the Code of Federal Regulations.  The regulation does not appear to be available through the CFR database in Westlaw.  The parties agree as to the language of the regulation, although they dispute its meaning.

in Section 236 mortgage loan notes.  Other courts have interpreted these issues differently.[3]

  A.  <u>Prepayment Provisions</u>

  To be eligible for prepayment of a Section 236 loan without HUD approval under the HUD regulation, a Section 236 mortgagor must be a limited distribution entity who is not receiving payments under a HUD rent supplement contract and more than twenty years must have passed since HUD endorsed the mortgage loan.[4]  24 C.F.R. § 236.30(a)(1).  Brook Village's mortgage loan note includes Rider A, which incorporates the same conditions for prepayment.  The disputed phrase in the regulation and the note is:  "'the mortgagor is not receiving payments . . . under a rent supplement contract.'"  HUD's Mem. (doc. no. 25) at 12 (quoting § 236.30(a)(1)).

---

  [3]In fact, HUD acknowledges that its own employee told Brook Village in 2000 that it could prepay the Section 236 mortgage and that other HUD employees told Brook Village in 2005 that the Rent Supplement Contract did not require project owners to rent to low-income tenants.  HUD, however, disclaims those representations by its employees as errors and as not expressing official HUD policy.

  [4]Congress "clarified" the conditions required for prepayment in the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, Pub.L. No. 105-276, § 219, 112 Stat. 2461 , 2487-88 (Oct. 21, 1998).  <u>See</u> <u>Forest Park II v. Hadley</u>, 336 F.3d 724, 729 (8th Cir. 2003).  Brook Village asserts that it has satisfied all the prepayment conditions imposed by Section 219.  HUD has not addressed Section 219.

HUD contends that the regulation controls Brook Village's right to prepay without its approval and interprets the disputed phrase to mean that a mortgagor is receiving payments if funds are available to make payments under a rent supplement contract whether or not HUD is making such payments at the time in question.  HUD further contends that deference is due its interpretation of § 236.30(a)(i).  Brook Village asserts that HUD is bound by the terms of the Section 236 mortgage loan note, which governs its right to prepay, and that no deference should be given to HUD's interpretation of language in the note. Similar issues have been addressed by the Federal Circuit and the Tenth Circuit.

    B.  <u>Cienega Gardens</u>

    In <u>Cienega Gardens v. United States</u>, 194 F.3d 1231, 1233 (Fed. Cir. 1998), the plaintiffs, Section 236 mortgagors, argued that the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA") and the Low-Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA"), which added restrictions for prepayment of Section 236 loans without HUD approval, breached contracts between them and HUD.  A majority of the Federal Circuit panel concluded that the mortgage loan note did not bind HUD because the various contracts that constituted the transaction with the plaintiffs for construction, financing, and

7

regulation of low-income housing each stood alone and HUD was not in privity of contract with the mortgagors on the notes.[5]  Id. at 1241-43.  The majority also concluded that because § 236.30, along with other HUD regulations, were subject to amendment, HUD would not have entered into an agreement that fixed the mortgagor's right to prepay when HUD had the right to amend the applicable regulations, thereby changing the terms for prepayment.  Id. at 1244.

The dissenting judge concluded that HUD intended to and did bind itself to the prepayment provisions in the mortgage note and that the HUD regulations, in effect when HUD agreed to the transaction, governed the mortgagors' right to repay without HUD approval.  Id. at 1247-50.  In addition, the dissent stated, "[i]t is undisputed that the regulations referred to in these documents expressly permitted Owners to prepay their mortgage notes after twenty years without HUD's consent and thereby be relieved of restrictions on rentals and profits."  Id. at 1250.

---

[5]HUD's success on appeal became a Pyrrhic victory when the plaintiffs later prevailed on their claims that ELIHPA and LIHPRHA effected temporary regulatory takings of their properties.  See Independence Park Apartments v. United States, ---- F.3d ---, 2006 WL 2661058 (Fed. Cir. Sept. 15, 2006); Independence Park Apartments v. United States, 449 F.3d 1235, 1238 (Fed. Cir. 2006).

C.  <u>Aspenwood</u>

In <u>Aspenwood Investment Co. v. Martinez</u>, 355 F.3d 1256, 1258
(10th Cir. 2004), the plaintiff sought a declaratory judgment
that it was entitled to prepay its Section 236 loan without HUD
approval based on the provisions of Rider A to its mortgage loan
note.  The district court held that HUD's regulation, § 236.30,
rather than the terms of the mortgage note, controlled the
plaintiff's right of repayment and deferred to HUD's
interpretation of the regulation.  <u>Id.</u> at 1259.  On appeal, the
Tenth Circuit disagreed with the district court and the
majority's reasoning in <u>Cienega Gardens</u> and found "the analysis
of the dissent, which followed that of the Court of Federal
Claims in the decision appealed from, more persuasive than that
of the majority."  <u>Aspenwood</u>, 355 F.3d at 1260.

The court noted HUD's control over and involvement in all
aspects of the various agreements that constituted the
transaction for financing, construction, and regulation of the
plaintiff's housing project.  <u>Id.</u>  The court also noted HUD's
close regulation of the operation of the project once it was
built.  <u>Id.</u>  The court concluded "that the manifest intent of the
parties was to enter into a transaction in which each part, as
represented by the various documents, was an essential element of
the whole; the meaning of each element can be understood only in
the context of all of the other elements."  <u>Id.</u>  The court

further held "that it was the demonstrated intent of HUD (and of plaintiff and of the lender) to be bound by the terms of all of the parts of the transaction."  <u>Id.</u>

With those issues resolved, the case focused on the meaning of the phrase "'is not receiving payments . . . under a rent supplement contract,'" as part of the prepayment provision of Rider A to the mortgage loan note.  <u>Id.</u>  The court found "the term is not ambiguous but has a plain and ordinary meaning."  <u>Id.</u>  The court further found that HUD's interpretation of the phrase, "that the debtor 'is not a party to a rent supplement contract for which adequate funding from HUD is available, so that upon the event of an eligible tenant commencing to reside in the project, payments under the rent supplement contract would be made' . . . would torture the actual language of the contract, which is quite clear."  <u>Id.</u> at 1261.

Alternatively, the court considered HUD's interpretation of § 236.30 under the deferential standard that "[a]n agency's interpretation of its own regulations should be upheld unless it is plainly erroneous or inconsistent with the regulation."  <u>Id.</u> (citing <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512–13 (1994)).  The court held that the phrase "'is not receiving payments,' as used in the regulation . . . is not ambiguous, as HUD contends, but rather is plain, simple and easily understood." <u>Aspenwood</u>, 355 F.3d at 1261.  The court stated that "[t]he plain

10

language of the regulation does not permit HUD's interpretation, and we reject the invitation to disfigure the language in order to achieve such a result." Id.

D. Conclusion

The Tenth Circuit's analysis of the relationship among the agreements and the entities, including HUD, that are involved in a transaction for low-income housing under the Fair Housing Act is persuasive. Based on the allegations in the complaint in this case, HUD acted as if it were a party to the mortgage loan by instructing Fannie Mae not to accept payment of the balance on the loan from Brook Village. Whether the prepayment provision in Rider A to the mortgage loan note or HUD's regulation, § 236.30, governs Brook Village's right to prepay its mortgage loan without HUD approval, the result is the same for purposes of the present motion to dismiss. Therefore, it is not now necessary to decide whether HUD is bound by the terms of the mortgage loan note.

24 C.F.R. § 236.30 is a HUD regulation for implementation of the Fair Housing Act, and Congress delegated authority to HUD to promulgate such regulations. See 12 U.S.C. § 1715z-1(h). An agency's reasonable interpretation of its own regulation is entitled to substantial deference. United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 219 (2001). Nevertheless, "deference is due to the [agency's] interpretation of a

particular regulation only when the language of the regulation either (1) compels that interpretation or (2) admits of differing interpretations, and the [agency] chooses reasonably among them." S. Shore Hosp. v. Thompson, 308 F.3d 91, 97 (1st Cir. 2002).

To reiterate, the disputed phrase from § 236.30, which also appears in the note, is:  "the mortgagor is not receiving payments . . . under a rent supplement contract."  HUD argues that the phrase is ambiguous and is properly interpreted to mean that a mortgagor is receiving payments if funds are available to make payments under a rent supplement contract whether or not HUD is making such payments at the time in question.  Brook Village asserts that the phrase means that if the mortgagor is not then receiving payments that condition is satisfied regardless of whether money would be available to make payments.

As the Tenth Circuit held in Aspenwood, the part of § 236.30 pertaining to prepayment and the similar provision in Rider A to the mortgage note are not ambiguous and have a plain and ordinary meaning.  The regulation and note provision mean what they say: the condition is satisfied if the mortgagor is not receiving payments under a rent supplement contract.  HUD's interpretation, which adds a different standard based on whether funds are available, is not a reasonable interpretation of that language. Therefore, based on the plain meaning of "not receiving payments," Brook Village has stated a declaratory judgment claim,

12

even if the regulation rather than the terms of the mortgage loan
note govern its right to prepay the note without HUD approval.

II.  <u>Fannie Mae's Motion to Dismiss</u>

Fannie Mae moves to dismiss Brook Village's breach of
contract claim on the grounds that the claim is barred by the
statute of limitations and that Brook Village has not alleged a
breach of the mortgage loan note.  Brook Village responds that
Fannie Mae breached the prepayment provision in the mortgage note
in 2006 so that the breach of contract claim is not time barred.
Brook Village also contends that it has alleged breach of the
note based on its interpretation of the disputed language.

A.  <u>Statute of Limitations</u>

The parties agree that New Hampshire's three year statute of
limitations governs the breach of contract claim.  <u>See</u> N.H. Rev.
Stat. Ann. § 508:4, I.  "'A breach of contract occurs when there
is a failure without legal excuse, to perform any promise which
forms the whole or part of a contract.'"  <u>W. Gate Village Ass'n
v. Dubois</u>, 145 N.H. 293, 298 (2000) (quoting <u>Bronstein v. GZA
GeoEnvtl.</u>, 140 N.H. 253, 355 (1995)).  "An anticipatory breach of
a contract occurs when a promising party repudiates his
obligations either through words or by voluntarily disabling
himself from performing them before the time for performance."

13

LeTarte v. W. Side Dev., LLC, 151 N.H. 291, 294 (2004).  The non-
breaching party has the option of bringing suit immediately when
an anticipatory breach or a breach of a continuing contract
occurs but is not required to do so.  Id.

In this case, Brook Village alleges that under the terms of
the mortgage loan note, it is entitled to prepay the loan.  It
alleges that it attempted to repay the loan by tendering a check
for the balance due on January 11, 2006.  GMAC, on behalf of
Fannie Mae, rejected Brook Village's tendered payment on January
12, 2006, because HUD had denied approval for the prepayment.
Brook Village alleges that Fannie Mae's rejection of its
prepayment breached the loan agreement.

Fannie Mae contends that the alleged breach occurred in 2001
when Fannie Mae notified Brook Village that it would not accept
prepayment of the loan based on HUD's notification that it would
not approve prepayment.  Brook Village responds that the events
in 2001 constituted a repudiation, not a breach of the agreement.
Brook Village maintains that the actual breach occurred in 2006
when Fannie Mae rejected the tendered payment.

Whether Brook Village could have brought suit based upon
Fannie Mae's notification in January of 2001 is not an issue in
this case.  Even if an anticipatory breach occurred at that time,
Brook Village retained the option to wait for an actual breach,

which it alleges occurred in January of 2006.  Brook Village is
limited to claiming damages caused by the alleged 2006 breach.

    B.   <u>Stating a Claim of Breach of Contract</u>

Fannie Mae also contends that Brook Village failed to allege
that it satisfied the three requirements for prepayment provided
in Rider A to the mortgage loan note, which are conditions
precedent to Fannie Mae's obligation to accept prepayment without
HUD approval.  Brook Village alleges that it is a limited
dividend entity and that more than twenty years have passed since
HUD endorsed the note.  Those elements are not disputed.

With respect to the disputed requirement, that it "is not
receiving payments from the Commissioner under a rent supplement
contract," Brook Village alleges that it "has not received any
payments from HUD under the Rent Supplement Contract since
February 1998."  Compl. ¶ 16.  Fannie Mae argues that the
complaint is insufficient to state a breach of contract claim
because Brook Village also alleges that HUD informed Fannie Mae
that it would not approve prepayment and because HUD disputes
Brook Village's claim that it has not received rent supplement
payments since 1998.  Because Brook Village need only allege
facts to support its claim and does not carry the burden of
proving those facts at this stage, the complaint states a claim
for breach of contract.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motions to dismiss (documents nos. 11 and 12) are denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

November 1, 2006

cc:  Elliott Berry, Esquire
     Michael g. Perez, Esquire
     T. David Plourde, Esquire
     Andrew W. Serell, Esquire
     Jonathan M. Shirley, Esquire
     Daniel E. Will, Esquire

16