UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Brook Village North Associates


        v.                        Civil No. 06-cv-46-JD
                                  Opinion No. 2008 DNH 001

Alphonso Jackson, Secretary
United States Department of
Housing and Urban Development


O R D E R

    Brook Village North Associates ("Brook Village") brought
suit seeking a declaratory judgment that it is entitled to prepay
its mortgage loan held by the Federal National Mortgage
Association ("Fannie Mae") and that the United States Department
of Housing and Urban Development ("HUD") lacks authority to
interfere with Brook Village's prepayment.  The parties have
entered a stipulation of dismissal as to all claims against
Fannie Mae, leaving HUD as the sole defendant.[1]  Brook Village
and HUD have filed cross motions for summary judgment.

_____

    [1]Because Alphonso Jackson is sued in his official capacity,
HUD is the defendant.

Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When, as here, the parties submit cross motions for summary judgment in a non-jury case on stipulated or materially undisputed facts, the case is submitted and the court must determine the inferences to be drawn from those facts.  See Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 643-44 (1st Cir. 2000).

Background[2]

Brook Village North Associates ("Brook Village") is a limited partnership that owns Brook Village North Apartments ("Apartments").  The Apartments project is a multi-family complex of 160 rental units located in Nashua, New Hampshire.  Brook Village obtained financing for the Apartments under Section 236 of the National Housing Act, and signed a mortgage loan note on November 4, 1971, in the amount of $3,446,500.  The mortgage loan

_____

[2]The factual background in this case is not disputed.

2

note is now held by Fannie Mae.  Pursuant to Section 236, HUD
insured the mortgage loan but is not a party to the note.

On November 4, 1971, Brook Village and HUD entered a rent
supplement contract under which HUD paid Brook Village rent
supplements on behalf of low income tenants in an amount that was
estimated to be enough to assist tenants in approximately 32 of
the Apartments' 160 units.  Brook Village has not billed HUD and
has not received rent supplement payments since February of 1998.

Under the terms of the mortgage loan note, Brook Village can
prepay its mortgage loan without HUD approval based on the
following requirements:  (1) if it is a limited dividend entity,
(2) which is not receiving payments from HUD under a rent
supplement contract, and (3) it is twenty years or more since the
date of HUD's endorsement of the note.  The parties agree that
Brook Village satisfies the first and third requirements.  They
dispute the requirement that Brook Village "is not receiving
payments . . . under a rent supplement contract."

In June of 2000, Brook Village asked HUD officials in New
Hampshire if it were eligible to prepay the loan without HUD
approval.  In July, Cecile Chabot, HUD's New Hampshire employee
who was overseeing the Apartments' operations, told Brook Village
that it was eligible to prepay the loan.  Based on that advice,

3

Brook Village gave the required notices, obtained financing to prepay the loan, and had surveys and other work done.

In January of 2001, before the prepayment was made, HUD notified Brook Village that it would not approve prepayment unless Brook Village agreed to continue the rental restrictions that were imposed under Section 236.  Brook Village and HUD entered into negotiations on their differing positions about prepayment until August of 2005, when Brook Village again provided the required notices of its intent to prepay the loan. When the prepayment was tendered, however, in January of 2006, the holder of the note refused to accept it, having been told by HUD that prepayment was denied.  Brook Village filed suit in February of 2006.

HUD previously moved to dismiss Brook Village's suit based on HUD's interpretation of the phrase "the mortgagor is not receiving payments . . . under a rent supplement contract," which is part of 24 C.F.R. § 236.30(a)(1).[3]  HUD argued that its approval was required for prepayment as long as funds were available to provide rent supplements, whether or not HUD was actually making supplemental payments to Brook Village.  Brook

---

[3]Section 236.30, which governed Section 236 loans, is no longer printed in the Code of Federal Regulations.  The parties agree to the language of the section but disagree as to its meaning.

Village relied on the same phrase, included as Rider A in its mortgage loan note, and argued that it was entitled to prepay the loan because it was no longer receiving supplemental payments.

Following the Tenth Circuit's well-reasoned decision on the same issue, <u>Aspenwood Inv. Co. v. Martinez</u>, 355 F.3d 1256 (10th Cir. 2004), this court concluded that the disputed phrase was not ambiguous and had a plain and ordinary meaning. <u>See</u> Order, Nov. 1, 2006, at 11-13. In that order, the court held that the phrase means that the condition for prepayment is satisfied if the mortgagor is not receiving payments under a rent supplement contract. <u>Id.</u> Because Brook Village stated a claim for declaratory judgment based on its interpretation of the disputed phrase, HUD's motion to dismiss was denied.

<u>Discussion</u>

In support of its motion for summary judgment, Brook Village contends that it is entitled to prepay its mortgage loan without HUD approval under the Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, Public Law No. 105-276, § 219, 112 Stat. 2461, 2487-2488 (1998) ("Section 219"). Alternatively, Brook Village contends it has met the requirements for prepayment under the terms of the mortgage loan note, Rider A, and the same

requirements under 24 C.F.R. § 236.30.  HUD moves for summary
judgment on the ground that § 236.30 governs the right to prepay
without HUD approval and argues that the phrase "not receiving
payments . . . under a supplemental contract" is ambiguous and
should be interpreted to mean that a mortgagor is not eligible
for prepayment as long as eligible tenants exist and funds are
available for payments under the rent supplement contract.[4]

The parties dispute focuses on the meaning of the phrase
"not receiving payments . . . under a supplemental contract"
which is used in the prepayment regulation, § 236.30(a)(1)(I),
and in the prepayment provision of Brook Village's mortgage note.
The context in which the phrase is construed affects the standard
that would apply.  See Aspenwood, 355 F.3d at 1259.  If the
phrase is construed as part of the mortgage note, as Brook
Village urges, ordinary principles of contract interpretation
would govern and no deference would be afforded HUD's
interpretation of the phrase.  See id. at 1260.  On the other
hand, if the phrase is interpreted as part of § 236.30(a)(1)(I),
HUD's interpretation is entitled to substantial deference and

---

[4]Although the same issue was decided against HUD in denying
HUD's motion to dismiss, it must be addressed again because the
law of the case doctrine does not apply to interlocutory orders,
such as a denial of a motion to dismiss.  Harlow v. Children's
Hosp., 432 F.3d 50, 55 (1st Cir. 2005).

would be given controlling weight "unless it is plainly erroneous
or inconsistent with the regulation."  Thomas Jefferson Univ. v.
Shalala, 512 U.S. 504, 512 (1994); accord Aspenwood, 255 F.3d at
1261.

A.  Section 219

The complex statutory and regulatory history that pertains
to Section 236 housing projects has been thoroughly reviewed in
other cases and need not be set forth here.  See Ciengega Gardens
v. United States, 503 F.3d 1266, 1270-73 (Fed. Cir. 2007);
Independence Park Apartments v. United States, 449 F.3d 1235,
1237 (Fed. Cir. 2006); Aspenwood Investment Co. v. Martinez, 355
F.3d 1256, 1257 (10th Cir. 2004).  It is undisputed that Section
219 provides a prepayment right for owners of Section 236 housing
projects.[5]  See Cienega Gardens, 503 F.3d at 1274 n.8.  Brook

_____

[5]Section 219 provides as follows:

(a) Prepayment Right.-- Notwithstanding [prior acts],
subject to subsection (b), with respect to any project
that is eligible low-income housing (as that term is
defined in section 229 of the Housing and Community
Development Act of 1987)--

(1) the owner of the project may prepay, and the
mortgagee may accept prepayment of, the mortgage on the
project, and

(2) the owner may request voluntary termination of a

7

Village contends that it is entitled to prepay its mortgage loan note by meeting the requirements of Section 219, while HUD contends that its regulation governing prepayment, 24 C.F.R. § 236.30(a)(1)(I), governs prepayment.

Brook Village contends that it need only satisfy the conditions imposed by § 219(b) to be entitled to prepay its mortgage loan without HUD approval.  HUD argues that § 219 applies <u>after</u> an owner is entitled to prepay the note without HUD

---

mortgage insurance contract with respect to such project and the contract may be terminated notwithstanding any requirements under sections 229 and 250 of the National Housing Act.

(b) Conditions. --Any prepayment of a mortgage or termination of an insurance contract authorized under subsection (a) may be made --(1) only to the extent that such prepayment or termination is consistent with the terms and conditions of the mortgage or mortgage insurance contract for the project;

(2) only if the owner of the project involved agrees not to increase the rent charges for any dwelling unit in the project during the 60-day period beginning upon such prepayment or termination; and

(3) only if the owner of the project provides notice of intent to prepay or terminate, in such form as the Secretary of Housing and Urban Development may prescribe, to each tenant of the housing, the Secretary, and the chief executive officer of the appropriate State or local government for the jurisdiction within which the housing is located, not less than 150 days, but not more than 270 days, before such prepayment or termination . . . .

approval, which must be determined under § 236.30.  Under HUD's
interpretation of § 236.30(a)(1)(I), Brook Village would not be
eligible to prepay the note without HUD's approval.

The prepayment right provided in § 219 applies to "any
project that is eligible for low-income housing."  Pub. L. No.
105-276, § 219, 112 Stat. at 2487.  The term "low-income housing"
is defined for purposes of § 219, in pertinent part, as:

> housing financed by a loan or mortgage- (A) that is- .
> . . (iii) insured, assisted, or held by the Secretary
> or a State or State agency under section 1715z-1 of
> this title . . .  and (B) that, under regulation or
> contract in effect before February 5, 1998, is or will
> within 24 months become eligible for prepayment without
> prior approval of the Secretary.

12 U.S.C.A. § 4119(1).  Therefore, to use § 219, Brook Village
must be within 24 months of becoming eligible for prepayment
without HUD approval under either a regulation or a contract that
was in effect before February 5, 1988.

Brook Village asserts that it is eligible for prepayment
without HUD approval based on Rider A to its mortgage note, which
is a contract that was in effect before February 5, 1988.  HUD
insists that Brook Village must meet the requirements of §
236.30(a), a regulation in effect before February 5, 1988.  The
parties' differing positions requires an examination of the
language used in the definition of "low-income housing" in §
4119(1).

9

The pertinent part of the definition provides that "low-income housing" is that which will become eligible for prepayment without HUD approval "under regulation or contract in effect before February 5, 1998." § 4119(1) (emphasis added).  Brook Village relies on the contract segment while HUD relies on the regulation segment.  The plain language of § 4119(1) offers both bases, that is, an owner could be eligible for prepayment without HUD approval, by satisfying an applicable regulation or by satisfying the terms of a qualifying contract.  Therefore, if Brook Village would be eligible for prepayment without HUD approval under the terms of a contract in effect before February 5, 1998, it meets the definition and can use the prepayment option under § 219.

Brook Village asserts without opposition from HUD that Rider A to its mortgage note is a contract that was in effect before February 5, 1988.  Rider A allows Brook Village to prepay the note without HUD approval as long as Brook Village is "a limited dividend entity which is not receiving payments from [HUD] under a rent supplement contract . . . and the prepayment occurs after the expiration of (20) years from the date of final endorsement . . . ."  Pl. Mot. S.J., Levin Aff. Ex.1.  The parties agree that Brook Village is a limited dividend entity and that more than twenty years have passed since the final endorsement on the

mortgage note.  Brook Village received its last payment from HUD under the rent supplement contract in February of 1998 and is not receiving payments from HUD now.

The phrase "is not receiving payments from [HUD] under a rent supplement contract" has a plain, ordinary, and obvious meaning.  Aspenwood, 355 F.3d at 1260.  Because Brook Village received its last payment in 1998, it is not now receiving payments under a rent supplement contract, and the circumstances here satisfy the requirements of Rider A.  See id. at 1260-61.  Therefore, Brook Village is eligible to prepay its mortgage note without HUD approval under the terms of Rider A and can proceed under § 219.

B.  Section 236

In the alternative, the court will also consider HUD's view that Brook Village would have to satisfy § 236.30(a)(1)(I) before it would be eligible to prepay the note without HUD approval. Section 236.30(a)(1)(I) conditions the right to prepay a Section 236 mortgage on showing, inter alia, that "the mortgagor is not receiving payments from the Commissioner under a rent supplement contract."  HUD asserts that the quoted phrase is ambiguous and that its interpretation of the phrase is reasonable and entitled to governing weight.

HUD argues that the phrase "is not receiving payments" should be construed to mean "that, even if the owner has ceased submitting vouchers for Rent Supplement payments to HUD at the time of the prepayment request, the owner could bill HUD in the future, so long as there is sufficient funding and there are eligible Rent Supplement tenants."  Def. Mem. S.J. at 12.  HUD interprets the phrase to mean both the actual transfer of money and eligibility to receive payments in the future.  In other words, HUD contends that the phrase does not mean what it says but instead means that an owner "is receiving payments" if it might sometime in the future receive payments.

As is discussed in the context of HUD's motion to dismiss and as was held by the Tenth Circuit, the phrase is not ambiguous, but instead means what it says.  HUD's interpretation is contrary to the plain meaning of the regulation, is not reasonable, and is patently erroneous.  See Aspenwood, 355 F.3d at 1261.  Therefore, the court rejects HUD's interpretation and instead adopts the plain meaning of the phrase, which favors Brook Village.

C.  Absurd Result

In the event it did not prevail on its interpretation of § 236.30(a)(1)(I), HUD asks the court to decline to enforce the

12

regulation because such an interpretation "would produce absurd
results contrary to the remedial program."  Def. Mem. S.J. at 14.
HUD argues that Brook Village could achieve a right to early
prepayment by not billing for rent supplements that were due, by
failing to rent units, and by avoiding tenants eligible for rent
supplements in violation of the regulatory requirements for
tenant selection and participation.  HUD contends that such a
result would undermine the intent of Section 236 housing
programs.

       If HUD believes that Brook Village violated its obligations
under applicable regulations or the rent supplement contract, HUD
presumably could have brought appropriate action to enforce those
provisions.  HUD did not bring any such claims in this case.  The
court will not fashion a policy-driven result to achieve measures
that HUD did not directly seek against Brook Village.


                              Conclusion

       For the foregoing reasons, the plaintiff's motion for
summary judgment (document no. 48) is granted.  The defendant's
motion for summary judgment (document no. 50) is denied.


                                 13

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

January 4, 2008

cc:  Elliott Berry, Esquire
     Michael G. Perez, Esquire
     T. David Plourde, Esquire
     Andrew W. Serell, Esquire
     Jonathan M. Shirley, Esquire
     Daniel E. Will, Esquire